

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00365-CR

CHRISTOPHER LIM                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

### FROM THE 16TH DISTRICT COURT OF DENTON COUNTY
### TRIAL COURT NO. F-2013-1991-A

----------

## MEMORANDUM OPINION[1]

----------

Appellant Christopher Lim appeals his first-degree-felony conviction for possessing and intending to deliver between four and two hundred grams of methamphetamine.[2]  In three issues, he contends that the trial court abused its

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Health & Safety Code Ann. § 481.112(a), (d) (West 2010).

discretion by admitting certain evidence offered by the State and by overruling his objection to part of the State's closing argument concerning his guilt. We affirm.

**Background Facts**

One afternoon in June 2012, Lewisville police officer Steven Schaffer received a call about a disturbance occurring at a car mechanic's shop. When he arrived at the shop, he saw a man yelling at appellant, who was sitting in a car. Officer Schaffer heard that the dispute between the two men concerned "some stolen wheels." When appellant stood up out of the car and began walking near it, Officer Schaffer saw him carrying a glass narcotics pipe. Officer Schaffer asked appellant about the dispute concerning the wheels, and appellant said that he wanted to get back in the car. After Officer Schaffer told appellant to stay out of the car, appellant asked to use the bathroom, and Officer Schaffer believed that appellant was trying to "dispose of something."

Officer Schaffer asked appellant whether he was carrying any contraband in his pocket, and appellant said that he was not but allowed Officer Schaffer to search him. Upon searching appellant, Officer Schaffer found a digital scale, a pill bottle containing a crystal substance that Officer Schaffer believed to be methamphetamine, and several plastic baggies.[3] Based on the large amount of

---

[3]Officer Schaffer later conducted a field test of the substance, which returned positive for methamphetamine. A forensic scientist also tested the substance and confirmed that it was 17.13 grams of methamphetamine.

methamphetamine that he discovered and the presence of the baggies and the scale, Officer Schaffer believed that appellant intended to deliver the methamphetamine. Officer Schaffer arrested appellant.

A grand jury indicted appellant with possessing while intending to deliver between four and two hundred grams of methamphetamine. The trial court set a trial date for July 28, 2014. Appellant did not appear for trial that day. Instead, he went to a hospital two times after trying to commit suicide twice by taking drugs. According to appellant, on that day, although he knew he was not guilty, he was "very scared, nervous, anxious, [and] beside [himself]." The next day, appellant learned that a warrant had been issued for his arrest.

At the rescheduled trial a couple of weeks later, appellant appeared and pled not guilty. In front of a jury, he testified that he is a long-time methamphetamine addict and that he has been convicted of drug-related offenses, including possessing a controlled substance with intent to deliver.[4] He stated that he had previously used drugs at the car mechanic's shop where he was arrested but that in June 2012, he was in a period of sobriety.

Another officer who was at the scene corroborated much of Officer Schaffer's testimony, including the testimony about what he found upon searching appellant.

[4]In 2000, appellant was convicted of possessing and intending to deliver a controlled substance in 1999. His probation for that offense was revoked in 2002. He was also convicted in 2009 for possessing a controlled substance in 2008. He was also placed on deferred adjudication in 2009 for possessing less than a gram of methamphetamine in 2008.

Appellant testified that on the date of his arrest, he was at the shop to retrieve his car when he saw a bag in the car that he did not recognize. He stated that he opened the bag and saw that it contained drug-related items just before police officers arrived at the shop. Appellant claimed that he panicked and put some items in his pockets, where Officer Schaffer later found them, but he denied that any of the items belonged to him or that he knowingly possessed methamphetamine. He testified that he did not know who placed the drugs and other items in his car.

After the parties concluded their presentation of evidence and arguments, the jury convicted appellant. The jury then considered evidence (including testimony by appellant and his mother) and arguments concerning appellant's punishment and assessed twenty years' confinement. The trial court sentenced appellant in accordance with the jury's verdict and entered a judgment of conviction. He brought this appeal.

**Admission of Evidence**

In his first two issues, appellant contends that the trial court abused its discretion by admitting evidence related to his failure to appear at the first trial setting and related to his prior drug-related convictions. We review a trial court's admission of evidence over a defendant's objection for an abuse of discretion. *Sanders v. State*, 422 S.W.3d 809, 812 (Tex. App.—Fort Worth 2014, pet. ref'd); *Sandone v. State*, 394 S.W.3d 788, 791 (Tex. App.—Fort Worth 2013, no pet.). An abuse of discretion occurs when a trial court's decision is so clearly wrong as

4

to lie outside the zone of reasonable disagreement. *Sanders*, 422 S.W.3d at 812–13; *Sandone*, 394 S.W.3d at 791.

Before voir dire of the jury panel, during a discussion of appellant's motion in limine, the State informed the trial court that it intended to present evidence of appellant's failure to attend trial when it was originally scheduled and his drug use on that date. The trial court indicated that it would later hold a hearing outside of the jury's presence concerning the admissibility of that evidence. Later, after the State concluded its presentation of evidence on appellant's guilt and after appellant expressed his plan to testify during the presentation of his case, the State proposed to present evidence about appellant's "absenting himself from" his prior trial date because his doing so was an indication of guilt. Appellant asked for the exclusion of such evidence, contending that whether he was "hiding out" or "fleeing" was speculative and had no relevance to whether he was guilty of possessing and intending to deliver a controlled substance. The trial court opined that the "case law is pretty clear that a Defendant's voluntarily absenting himself or fleeing from prosecution can be heard by the jury, and they can even make some inference as to his guilt regarding that." The trial court therefore admitted evidence about appellant's failure to appear for his first trial date, including that he had admitted taking harmful drugs that day.

Similarly, before appellant began testifying, the State proposed to ask him impeachment questions about his prior drug-related felony convictions. Appellant objected on the grounds that evidence of his prior convictions would be

5

"highly prejudicial." The trial court ruled that it would allow the State to ask appellant about the prior convictions.

**Evidence of failure to attend trial**

Appellant first argues that the trial court abused its discretion by admitting evidence that he did not appear at his original trial setting and that he used drugs that day. He argues both that the evidence was irrelevant and that even if it was relevant, it was extremely prejudicial.

Evidence is relevant if it has any tendency to make a material fact more or less probable than it would be without the evidence. Tex. R. Evid. 401; *see James v. State*, 356 S.W.3d 728, 733–34 (Tex. App.—Fort Worth 2011, pet. ref'd). Only relevant evidence is admissible. *See* Tex. R. Evid. 402; *James*, 356 S.W.3d at 733. A trial court may exclude relevant evidence if its probative value is substantially outweighed by a potential for unfair prejudice. Tex. R. Evid. 403. We have explained that factors in a rule 403 balancing test include

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time[5] or merely repeat evidence already admitted. The rules of

---

[5]Here, only appellant testified about his failure to appear at the first trial setting, and his testimony in that respect was only a portion of his testimony as a whole.

6

> evidence favor the admission of relevant evidence and carry a presumption that relevant evidence is more probative than prejudicial.

*Kirk v. State*, 421 S.W.3d 772, 782 (Tex. App.—Fort Worth 2014, pet. ref'd), (citation omitted); *see also Padilla v. State*, No. 02-11-00336-CR, 2012 WL 4815506, at *4 (Tex. App.—Fort Worth Oct. 11, 2012, no pet.) (mem. op., not designated for publication) ("[A] trial judge is presumed to engage in the required balancing test once rule 403 is invoked, and the judge is not required to sua sponte place any findings or conclusions made into the record.").

Texas courts have long held that extraneous acts designed to reduce the likelihood of prosecution, conviction, or incarceration for an offense are relevant and admissible to show a defendant's "consciousness of guilt."[6]  *See Ransom v. State*, 920 S.W.2d 288, 299 (Tex. Crim. App.) (op. on reh'g), *cert. denied*, 519 U.S. 1030 (1996); *Bigby v. State*, 892 S.W.2d 864, 884 (Tex. Crim. App. 1994), *cert. denied*, 515 U.S. 1162 (1995).  "Evidence of a defendant's desire to die or commit suicide is also admissible for this purpose." *Johnson v. State*, No. 01-11-00820-CR, 2013 WL 4680360, at *5 (Tex. App.—Houston [1st Dist.] Aug. 29, 2013, pet. struck) (mem. op., not designated for publication); *see also Perry v.*

---

[6]This is the rule not only in Texas but also elsewhere.  *See United States v. Hankins*, 931 F.2d 1256, 1261 (8th Cir.) (explaining that it is "universally conceded that the fact of an accused's flight, . . . resistance to arrest, concealment, assumption of a false name, *and related conduct*, are admissible as evidence of consciousness of guilt, and thus of guilt itself" (emphasis added)), *cert. denied*, 502 U.S. 886 (1991).

*State*, No. 08-12-00285-CR, 2014 WL 3051020, at *3 (Tex. App.—El Paso July 3, 2014, no pet.) (not designated for publication) ("[T]he jury was free to consider Appellant's apparent suicide attempt . . . as evidence of consciousness of guilt."); *Page v. State*, No. 03-12-00137-CR, 2013 WL 4487546, at *4 (Tex. App.—Austin Aug. 15, 2013, pet. ref'd) (mem. op., not designated for publication) ("[T]he jury could have reasonably inferred from Page's attempted suicide and other behavior that he had a consciousness of guilt."); *Alonzo v. State*, No. 01-07-00506-CR, 2008 WL 2611887, at *6 (Tex. App.—Houston [1st Dist.] July 3, 2008, pet. ref'd) (mem. op., not designated for publication) (concluding that a jury was entitled to infer a defendant's consciousness of guilt from statements that he wanted to die); *Johnson v. State*, 208 S.W.3d 478, 500 (Tex. App.—Austin 2006, pet. ref'd) (holding that evidence of a defendant's suicide plans was relevant to show consciousness of guilt).[7]

Based on this authority, we cannot conclude that the trial court abused its discretion by determining that the evidence of appellant's suicide attempt on the day of the first trial setting, which included his drug use,[8] was relevant and

---

[7]Appellant does not acknowledge or attempt to distinguish these cases concerning the admissibility of a defendant's suicide attempt.

[8]The fact that the "descriptive circumstances of [a defendant's] flight show the commission of other crimes does not render the evidence per se inadmissible, . . . but, in fact, such crimes may be shown if they are necessarily related circumstances of the proof of the flight of the accused." *Arivette v. State*, 513 S.W.2d 857, 862 (Tex. Crim. App. 1974).

admissible. *See Ransom*, 920 S.W.2d at 299; *Sanders*, 422 S.W.3d at 812; *James*, 356 S.W.3d at 733–34. Although appellant contends in part that his "ingesting of the illegal substance while on bond was an attempt to overdose and in no way linked to whether or not he committed the offense he was charged with," the trial court could have reasonably determined that the suicide attempt's correspondence with the trial setting was more than merely coincidental and that the jury could consider it as an attempt to avoid prosecution. Appellant admitted while testifying that he was "[v]ery sad, very scared, nervous, anxious, [and] beside [himself]" on the day he missed trial, and although he professed his innocence, the trial court could have rationally determined that the suicide attempt showed a consciousness of guilt. *See Johnson*, 2013 WL 4680360, at *5.

Concerning appellant's rule 403 complaint, we note that our sister courts have described consciousness-of-guilt evidence as "one of the strongest kinds of evidence of guilt." *Smith v. State*, No. 10-13-00278-CR, 2014 WL 4783251, at *5 (Tex. App.—Waco Sept. 18, 2014, pet. ref'd) (mem. op., not designated for publication); *Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.). Thus, although we recognize that the evidence of attempting suicide by using drugs (the exact drugs appellant used were unspecified to the jury, as was whether the drugs were legal) had some potential for prejudice in this case that involved possessing and intending to deliver methamphetamine, considering the factors above, we cannot conclude that the trial court abused its discretion by

9

determining that this potential did not substantially outweigh the probative value of the evidence so as to overcome the presumption of admissibility. *See* Tex. R. Evid. 403; *Kirk*, 421 S.W.3d at 782; *see also Almaguer v. State*, No. 13-12-00605-CR, 2014 WL 5088386, at *13 (Tex. App.—Corpus Christi Oct. 9, 2014, pet. ref'd) (op. on reh'g) ("Courts have held that the probative value of a crime showing consciousness of guilt may outweigh its prejudicial impact.").

For all of these reasons, we overrule appellant's first issue.

**Evidence of prior convictions**

In his second issue, appellant contends that the trial court abused its discretion by admitting evidence of his prior convictions as impeachment. He argues, in accordance with his objection at trial, that the prior convictions were prejudicial, that they had low probative value, and that they should have been excluded under rule 403. He contends, "People commit this offense whether they have prior convictions for it or not. Simply because Appellant has similar convictions does not mean that he committed this offense."

In "unambiguous plain language," rule of evidence 609 provides that a witness's "credibility may be attacked by admitting evidence that the witness previously has been convicted of a felony or crime of moral turpitude if the trial court determines that the probative value of admitting the evidence simply outweighs its prejudicial effect." *Meadows v. State*, 455 S.W.3d 166, 170 (Tex. Crim. App. 2015) (citing Tex. R. Evid. 609(a)). Once a defendant in a criminal prosecution voluntarily takes the witness stand, he is subject to the "same rules

as any other witness and may be impeached . . . and treated in every respect as any other witness testifying in his behalf, except when there are overriding constitutional or statutory provisions." *Alexander v. State*, 740 S.W.2d 749, 763 (Tex. Crim. App. 1987); *see Medina v. State*, 367 S.W.3d 470, 474 (Tex. App.—Texarkana 2012, no pet.) ("A defendant who testifies at trial may be impeached in the same manner as any other testifying witness."); *Miller v. State*, 196 S.W.3d 256, 267–68 (Tex. App.—Fort Worth 2006, pet. ref'd) (mem. op.) ("Generally, a defendant who testifies may be impeached by evidence of a prior conviction if the crime was a felony or involved moral turpitude and the court determines that the probative value of admitting the evidence outweighs its prejudicial effect.").

When weighing the probative value of a prior conviction used for impeachment against its prejudicial effect, courts may consider, among other factors, the impeachment value of the prior crime, the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history, the similarity between the past crime and the offense being prosecuted, the importance of the defendant's testimony, and the importance of the credibility issue. *Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992); *see Miller*, 196 S.W.3d at 268 (reciting and applying the *Theus* factors); *Woodall v. State*, 77 S.W.3d 388, 395 (Tex. App.—Fort Worth 2002, pet. ref'd) (same).

The two prior convictions here each involved appellant's possession of controlled substances. Possession of a controlled substance does not involve untruthfulness or deception, so the impeachment value of such a crime is lower,

11

which weighs against admission.[9]  *See Miller*, 196 S.W.3d at 268; *see also Baldez v. State*, No. 13-14-00257-CR, 2015 WL 1869435, at *2 (Tex. App.—Corpus Christi Apr. 23, 2015, no pet.) (mem. op., not designated for publication).

Next, the 2009 conviction was temporally proximate to the current offense, alleged to have been committed in 2012, and both prior convictions were probative to the extent that they demonstrated "a propensity for running afoul of the law."  *See Theus*, 845 S.W.2d at 881 (concluding that the second factor favored admission when the State offered a 1985 conviction in the trial of an offense that the defendant committed in 1990); *Miller*, 196 S.W.3d at 268 (holding that the second factor favored admission when the prior conviction occurred in 1997 and the charged offense occurred in 2003); *see also Baldez*, 2015 WL 1869435, at *2 (holding that a six-year gap between the prior conviction and the offense being tried favored admission).

Third, the past crimes and the offense being prosecuted were similar, which "militate[s] against admission."  *See Theus*, 845 S.W.2d at 881 ("The rationale behind this is that the admission for impeachment purposes of a crime similar to the crime charged presents a situation where the jury would convict on the perception of a past pattern of conduct, instead of on the facts of the charged offense."); *Miller*, 196 S.W.3d at 268 ("The similarity between Appellant's prior

---

[9]However, the court in *Theus* emphasized that all felony convictions have some probative value on the issue of a witness's credibility.  *See* 845 S.W.2d at 879 & n.3.

conviction for possession of a controlled substance and the instant offense of possession of . . . methamphetamine with intent to deliver militates against the admission of the prior conviction.").

The last two factors are

> related, because both depend on the nature of a defendant's defense and the means available to him of proving that defense. In situations where a defendant presents an alibi defense and can call other witnesses, the defendant's credibility is not likely to be a critical issue. Moreover, in such situations the defendant will not necessarily need to testify because other witnesses will be able to give evidence of his defense. When the case involves the testimony of only the defendant and the State's witnesses, however, the importance of the defendant's credibility and testimony escalates. As the importance of the defendant's credibility escalates, so will the need to allow the State an opportunity to impeach the defendant's credibility.

*Theus*, 845 S.W.2d at 881. Under this rationale, the last two factors weigh in favor of admitting the prior convictions in this case. Appellant's defense in the guilt-innocence phase of the trial consisted solely of his testimony supporting his theory that although the police found the methamphetamine (and related items) on him, he did not intentionally possess them and did not intend to deliver them. The trial court could have rationally determined, therefore, that his credibility was vitally important, and the court could have weighed that determination in favor of admitting evidence of the prior crimes.[10] *See id.*; *see also Woodall*, 77 S.W.3d at

---

[10]Appellant recognized at trial that his defense hinged on his credibility; he testified, "[A]ll I have, really, is the integrity of my word, and that has greatly increased in the past couple of years."

13

396 ("[W]here the case boils down to a 'he said, she said' situation between two witnesses, with little evidence to tip the scale in either party's favor, each [witness's] credibility becomes critical to the outcome of the case.").

In reviewing the trial court's decision to admit appellant's prior convictions for impeachment in light of these factors, we must accord the trial court wide discretion. *Theus*, 845 S.W.2d at 881. Considering the factors here, although the trial court could have weighed some of them in favor of excluding the evidence, we cannot hold that the trial court abused its wide discretion by implicitly finding that the probative value of the evidence outweighed its prejudicial effect and by admitting the evidence. *See id.*; *Sanders*, 422 S.W.3d at 812; *Miller*, 196 S.W.3d at 267–69 (holding that a trial court did not abuse its discretion by admitting evidence of a prior drug-related conviction in the trial of a drug-related offense even though some of the *Theus* considerations weighed against admission); *see also* Tex. R. Evid. 403 (allowing for exclusion of relevant evidence only when unfair prejudice substantially outweighs probative value), 609(a)(2). We overrule appellant's second issue.

## Jury Argument

In his third issue, appellant contends that the trial court erred by overruling his objection to part of the State's closing argument, which he contends introduced facts that were outside the record. We review the trial court's ruling on an objection to the State's jury argument for an abuse of discretion. *See Whitney v. State*, 396 S.W.3d 696, 705 (Tex. App.—Fort Worth 2013, pet. ref'd)

14

(mem. op.); *Montgomery v. State*, 198 S.W.3d 67, 95 (Tex. App.—Fort Worth 2006, pet. ref'd). The purpose of closing argument is to assimilate the evidence to assist the factfinder in drawing proper conclusions. *Davis v. State*, 268 S.W.3d 683, 714 (Tex. App.—Fort Worth 2008, pet. ref'd). To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 829 (1993); *Whitney*, 396 S.W.3d at 704.

"Counsel is allowed wide latitude without limitation in drawing inferences from the evidence so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith." *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988); *see also Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007) ("[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them."). But counsel "may not use closing arguments to present evidence that is outside the record. Improper references to facts that are neither in evidence *nor inferable from the evidence* are generally designed to arouse the passion and prejudice of the jury and, as such, are inappropriate." *Freeman v. State*, 340 S.W.3d 717, 728 (Tex. Crim. App. 2011) (emphasis added), *cert. denied*, 132 S. Ct. 1099 (2012).

During the State's closing argument on appellant's guilt, the following exchange occurred:

15

[THE STATE:] . . . [A] reasonable inference from this evidence would be that it appeared that [appellant] was in some sort of dispute with the mechanics there, and that there was something owed, there was some dispute over these tires, and these tires were going to be returned.

Well, maybe to pay . . . for these tires, [appellant] had the currency that he trades in, and that's methamphetamines. That's a reasonable inference from this evidence, is that those were his methamphetamines, and he had them there, and he had them in his hand there to be able to pay for these tires, to make good on whatever this civil debt was between these rims and these tires and this mechanic's space.

[DEFENSE COUNSEL]: Your Honor, I object, assuming facts not in evidence.

THE COURT: Overruled.

[THE STATE]: So that is absolutely a reasonable inference from the evidence here.

On appeal, appellant contends that while "there is evidence in the record that [a]ppellant was in some sort of dispute with the 911 caller, there was no evidence at all that [a]ppellant was there . . . trying to pay for the car tires with drugs."

The State argues that its closing argument was a reasonable inference from the evidence. We agree. Appellant testified that he had used drugs in the past at the mechanic's shop where he was arrested. He stated that Manolo, the owner of the shop, had used drugs with him there. Appellant admitted that on the day of his arrest, Manolo became angry with him while believing that appellant owed him money. Officer Schaffer indicated that when he arrived at the shop, "a guy"—perhaps Manolo—was yelling at appellant. Officer Schaffer also testified that he learned that there was a "dispute . . . over some stolen

16

wheels." Upon searching appellant, Officer Schaffer found a large amount of methamphetamine,[11] a scale, and several plastic baggies, indicating to Officer Schaffer that appellant was "a dealer." The methamphetamine had a value of over $1,000.

Given the circumstances that appellant had an apparent debt to Manolo, that he and Manolo had participated in drug interactions with each other in the past at the shop, and that appellant possessed all of the components of dealing a valuable amount of methamphetamine while at the shop, we conclude that the State's argument that appellant attempted to settle the debt by delivering methamphetamine was a reasonable deduction from the evidence. *See Felder*, 848 S.W.2d at 94–95; *Gaddis*, 753 S.W.2d at 398. Therefore, we conclude that the trial court did not abuse its discretion by overruling appellant's objection to the argument on the ground that the "facts [were] not in evidence," and we overrule his third issue.

---

[11]Officer Schaffer testified that a mere user of methamphetamine typically carries no more than a gram. Appellant possessed over seventeen grams.

## Conclusion

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 1, 2015